IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES C. SPEARMAN,                 *

     Plaintiff,                   *

     v.                         *

CITY OF ANNAPOLIS,           *                     CIVIL NO. JKB-21-1779

     Defendant.              *

   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Plaintiff James Spearman brings suit against the City of Annapolis ("Annapolis") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* (*See generally* Am. Compl., ECF No. 10.) Plaintiff brings claims alleging retaliation and discrimination during the time he worked for the Annapolis Police Department ("APD"). (*Id.*) Pending before the Court is Defendant's Motion to Dismiss (Mot. Dismiss, ECF No. 11), which the Court previously denied in part, granted in part, and held in abeyance in part, pending additional briefing from the parties. (*See generally* Mem., ECF No. 18.) The Motion is ripe for disposition and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the Court will grant in part and deny in part the portions of the Motion to Dismiss that were held in abeyance.

### I.     Background

Plaintiff, a black retired police officer with the APD, alleges that that, in May 2013, he and other APD officers filed suit alleging disparate treatment by Annapolis, Chief Michael Pristoop (APD Chief of Police), and Lt. Brian Della (an APD officer). (Am. Compl. ¶ 9.) In July 2014, during the pendency of that suit, Chief Pristoop reassigned Plaintiff to report to Lt. Della. (*Id.* ¶

10.)  In August and September of 2014, "Della repeatedly overrode Plaintiff's instructions to subordinates, undermining Plaintiff's command authority and endangering the chain of command" and "repeatedly questioned Plaintiff's decision-making ability, re-accessed[1] Plaintiff's evaluations of subordinate officers, and publicly undermined Plaintiff's capability to lead." (*Id.* ¶ 14–15.)

On September 2, 2014, Plaintiff made an informal complaint to Cpt. Cynthia Howard. (*Id.* ¶ 16.) On September 7, 2014, Plaintiff made a formal complaint with Human Resources, alleging that Lt. Della was creating a hostile work environment. (*Id.* ¶ 17.) On September 25, 2014, Cpt. Howard "instructed Della to cease from undermining Plaintiff's authority, undermining the chain of command, questioning Plaintiff's ability to lead, and, acting in her official capacity as a Captain with APD ordered Lt. Della not to interfere with Plaintiff's duties unless there were circumstances that warranted such interference." (*Id.* ¶ 18.) The next day, Lt. Della withheld Plaintiff's pay on the charge that Plaintiff had spent official time attending an administrative hearing, although officers are generally permitted to attend such hearings. (*Id.* ¶ 19.) The Annapolis Police Union intervened and APD deferred the charges. (*Id.* ¶ 20.)

On October 9, 2014, Plaintiff filed a second official complaint of a hostile work environment with Human Resources. (*Id.* ¶ 21.) On October 14, 2014, Plaintiff attempted to give Lt. Della paperwork and a leave slip for permission to take two hours of leave that day. (*Id.* ¶ 23–24.) Because Lt. Della was not in his office, Plaintiff left the paperwork and leave slip under his door, as is customary, and left the precinct. (*Id.* ¶¶ 25–27.) "Della received the other paperwork but claim[ed] that he 'could not find' the leave slip," so Plaintiff and Lt. Della exchanged text messages and Plaintiff resubmitted his request. (*Id.* ¶ 28–29.) The next day, after Plaintiff had

---

[1]     While the Court has not indicated here that Plaintiff's allegations included a typographical error, the Court nonetheless assumes that Plaintiff intended to allege that Lt. Della "reassessed" (rather than "re-accessed") Plaintiff's evaluations of subordinate officers.

already taken the two hours of leave, Lt. Della formally denied the leave application. (*Id.* ¶ 30.)

Lt. Della opened an investigation into Plaintiff's violation of APD's leave policy on October 17, 2014 and formally charged him with a leave-use violation and being Absent Without Leave ("AWOL") on October 20, 2014. (*Id.* ¶¶ 31, 32.) On November 6, 2014, Chief Pristoop transferred Plaintiff to the Neighborhood Enhancement Team ("NET"). (*Id.* ¶ 33.) In doing so, Plaintiff alleges that "Pristoop stripped Plaintiff of the respect and privileges that Plaintiff's rank had earned. Plaintiff lost access to an office, access to a vehicle, and access to a computer. In addition, Plaintiff suffered humiliation and loss of leadership within the APD." (*Id.* ¶ 34.)

On November 12, 2014, Lt. Della requested that the APD Internal Affairs Division ("IAD") investigate Plaintiff. (*Id.* ¶ 35.) On December 6, 2014, Plaintiff formally complained that Lt. Della's initiation of an IAD investigation was retaliatory for the three complaints Plaintiff had made to Human Resources and Cpt. Howard. (*Id.* ¶ 37.) On January 9, 2015, Human Resources concluded that Plaintiff's reassignments and Lt. Della's actions were not retaliatory, and the Annapolis Office of Law concurred in this conclusion. (*Id.* ¶¶ 38–40.)

On February 23, 2015, the Annapolis Office of Law pressed administrative charges against Plaintiff for the October 14, 2014 leave-use incident. (*Id.* ¶ 45.) The charge provides that Plaintiff violated SOP 93-07-16, "referencing minimum coverage/staffing for patrol platoons," and further alleges that his "absence reduced platoon staffing from 7 officers to 6 for the time he was absent." (*Id.* ¶ 47.) Plaintiff lost pay and vacation time when he was ultimately convicted by the administrative board of a leave violation. (*Id.* ¶ 60.)

Plaintiff alleges that a white sergeant, Sgt. Johnson, was treated differently from him with respect to the leave policy. Plaintiff was the sergeant in charge of Squad C and Sgt. Johnson was the sergeant in charge of Squad D; both Squads C and D were under Lt. Della's command. (*Id.* ¶

48.) Plaintiff alleges that Sgt. Johnson took leave on several occasions in October 2014 and that, on each of those occasions, her platoon was reduced from seven officers to six (and reduced from seven officers to five on one occasion). (*Id.* ¶¶ 50–54.) Despite these repeated violations of SOP 93-07-16, Plaintiff alleges that Sgt. Johnson was not investigated or disciplined. (*Id.* ¶ 55.)

Plaintiff has filed multiple complaints against the APD with the Equal Employment Opportunity Commission ("EEOC") and Maryland Commission on Civil Rights ("MCCR"), including one in 2015 ("2015 Charge") and one in May 2016, which was amended in August 2017 ("2016 Charge"). (ECF Nos. 16-1, 16-2, 19-1.) The 2015 Charge alleges that Plaintiff was discriminated against due to his race and retaliated against for opposing discriminatory activities and describes interactions with Lt. Della, including his scrutinization of Plaintiff's work in the summer of 2014, his charging Plaintiff with being AWOL in October 2014, and Plaintiff's transfer to the NET. (ECF No. 19-1.) The 2015 Charge also indicates that Plaintiff previously filed an EEOC charge naming Lt. Della. (*Id.*)

The 2016 Charge indicates that Plaintiff was "continuously reprimanded for violating the [APD's] policy governing staffing. The earliest accusation of violating this policy was in 2014." (ECF No. 16-1.) He further alleges that the APD "continues to accuse [him] of this violation[,] with the latest accusation being on or about May 2, 2016." (*Id.*) He explains that two white sergeants were not reprimanded despite violating the same staffing policy. (*Id.*) Plaintiff amended the 2016 Charge in August 2017. (ECF No. 16-2.) The amendment indicates that he previously filed two complaints for "opposing racially discriminatory workplace practices." (*Id.*) Plaintiff further explains that, on February 28, 2017, he was subjected to unfavorable terms and conditions of employment in retaliation for his "aforementioned participation in a protected activity." (*Id.*)

The MCCR issued written findings with respect to the 2016 Charge ("Written Findings"),

4

finding no probable cause to believe that Plaintiff had been discriminated or retaliated against. (ECF No. 16-3.) The Written Findings acknowledge the existence of prior complaints, including the 2015 Charge, but do not make any findings with respect to allegations contained in those complaints. (*See id.* ("The investigation established that Complainant filed a Complain[t] against the Respondent on November 14, 2011 and on February 11, 2015, alleging racial discrimination at the workplace.").) In April 2021, Plaintiff received a right-to-sue letter from the EEOC, which adopted the MCCR's findings, with respect to the 2016 Charge. (ECF No. 15-2.)

Defendant—along with other defendants against whom the Amended Complaint has already been dismissed—filed a Motion to Dismiss, which the Court has already granted in part and denied in part.[2] The Court held a portion of the Motion to Dismiss in abeyance, because Defendant raised three entirely new arguments for dismissal for the first time in its Reply: (1) the Court lacks subject matter jurisdiction because the allegations in the Complaint exceed the scope of the EEOC charge of discrimination; (2) Plaintiff filed his EEOC charges over 300 days after the unlawful employment actions; and (3) Plaintiff fails to state a claim under Title VII. (*See* Mem. at 6–8; Reply at 2–12, ECF No. 16.) The Court requested additional briefing to allow Plaintiff the opportunity to respond to these new arguments.[3] (*Id.* at 8.)

## II.      Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the

---

[2]      Defendants made four arguments in support of dismissal: (1) Plaintiff's service upon Defendants was insufficient; (2) APD is not an entity capable of being sued; (3) certain Defendants are not capable of being sued under Title VII; and (4) Plaintiff filed his Complaint over 90 days after he received the EEOC Letter. (Mot. Dismiss Mem. Supp. at 3–8, ECF No. 11-1.) The Court denied the Motion to Dismiss with respect to the first and fourth arguments but granted it as to the second and third arguments. (Mem. at 3–6.) Thus, the only remaining Defendant is Annapolis.

[3]      Plaintiff argues that the Court should not consider these additional arguments. (Supplemental Resp. at 2, 15–16, ECF No. 19.) However, full consideration of these arguments was precisely the reason the Court held portions of the Motion to Dismiss in abeyance and requested additional briefing from the parties. The Court therefore rejects this argument.

plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.    Analysis

Defendant makes three arguments in support of dismissal of Plaintiff's claims: (1) that Plaintiff has not fulfilled Title VII's charge-filing requirement; (2) that Plaintiff's allegations fall outside of the limitations period applicable to EEOC charges; and (3) that Plaintiff substantively fails to state a claim for retaliation and discrimination. As discussed in more detail below, none of these arguments support dismissal of Plaintiff's claims in their entirety at this time.

#### A.    Title VII's Charge-Filing Requirement

Defendant's first argument in support of dismissal is that the allegations in the Amended Complaint exceed the scope of the 2016 Charge. (Reply at 3–8; Supplemental Reply at 1–4, ECF No. 20.) Defendant argues that, because the right-to-sue letter references only the 2016 Charge (and not the 2015 Charge), Plaintiff's Amended Complaint must be limited to only those allegations contained in the 2016 Charge. (Supplemental Reply at 1–4.) Defendant does not argue that the allegations in the Amended Complaint exceed the scope of the 2015 Charge. Given the present state of the record, the Court will not dismiss Plaintiff's claim for failure to fulfill Title

VII's charge-filing requirement but will not foreclose Defendant's ability to raise this argument again at a later time.

As noted above, Plaintiff has filed multiple charges, including the 2015 Charge and the 2016 Charge, but has received a right-to-sue letter only with respect to the 2016 Charge. The 2015 Charge most closely parallels the allegations in Plaintiff's Amended Complaint, as it refers to the allegedly retaliatory and discriminatory behavior by Chief Pristoop and Lt. Della, including Plaintiff's reassignment to report to Lt. Della, Lt. Della's allegedly undermining behavior, the October 2014 AWOL charge, and Plaintiff's reassignment to the NET. (*See generally* ECF No. 19-1.) While it does not reiterate these allegations, the 2016 Charge explicitly references the 2015 Charge and notes that Plaintiff has "been continuously reprimanded for violating the [APD's] policy governing staffing" and that "[t]he earliest accusation of violating the policy was in 2014." (ECF No. 16-2.) Plaintiff's right-to-sue letter references only the 2016 Charge (ECF No. 15-2), and the only reference to the 2015 Charge in the MCCR's Written Findings is an acknowledgement that Plaintiff previously filed charges. (ECF No. 16-3 at 4.)

Filing a charge with the EEOC is a "precondition to the commencement of a Title VII action in court." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019). The parties refer to this requirement as jurisdictional. However, the Supreme Court recently concluded that filing charges with the EEOC is not a jurisdictional requirement but is rather a "claim-processing rule[] that must be timely raised to come into play." *Id.* Prior to *Fort Bend*, the Fourth Circuit treated the charge-filing requirement as jurisdictional, and plaintiffs were therefore required to allege facts sufficient to establish that they had fulfilled this requirement. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the

7

claim."), abrogated by *Fort Bend*, 139 S. Ct. 1843; *Xiao-Ying Yu v. Schrader*, Civ. No. JKB-17-3260, 2018 WL 3122458, at *4 (D. Md. June 26, 2018), aff'd sub nom. *Xiao-Ying Yu v. Neall*, 748 F. App'x 561 (4th Cir. 2019) (dismissing Title VII claims for "lack of subject matter jurisdiction due to [plaintiff's] failure to allege proper exhaustion of her administrative remedies").

Courts now treat the Title VII charge-filing requirement as an affirmative defense, which defendants must raise. *See, e.g., Sharpe v. Prince George's Cnty. Gov't*, Civ. No. TDC-17-3799, 2021 WL 928177, at *9 (D. Md. Mar. 11, 2021) (citing *Fort Bend*, 139 S. Ct. at 1848) ("[I]f a defendant raises exhaustion as an affirmative defense and the record establishes that the plaintiff has failed to comply with the applicable administrative procedures, the defendant is entitled to dismissal . . . on the unexhausted claims."); *Broome v. Iron Tiger Logistics*, Civ. No. 7-17-444, 2019 WL 6719495, at *7 (W.D. Va. Dec. 10, 2019) (explaining that *Fort Bend* "did not change Title VII's requirement that a claimant exhaust administrative remedies, but clarified that rather than challenge a plaintiff's claim for lack of subject matter jurisdiction, a defendant must raise the issue as an affirmative defense"). Further, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It is only in "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" that an affirmative defense can be reached by a motion to dismiss. *Id.* An affirmative "defense may be reached by a motion to dismiss . . . only . . . if all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." *Id.* (emphasis in original) (citations and quotations omitted).

Even when the charge-filing requirement was considered jurisdictional, the Fourth Circuit explained that a plaintiff need not have a right-to-sue notice in hand to bring suit in district court.

8

"The [EEOC's] failure actually to issue the notice cannot defeat the complainant's statutory right to sue in the district court, for a Title VII complainant is not charged with the [EEOC's] failure to perform its statutory duties." *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) (citations, quotations, and alterations omitted). As this Court has previously explained, a plaintiff may bring suit in district court when he is "entitled" to a right-to-sue letter. *Gardner v. Md. Mass Transit Admin.*, Civ. No. JKB-18-365, 2018 WL 2193692, at *4 (D. Md. May 14, 2018). A plaintiff is "entitled" to a right-to-sue letter when he "should receive" such a letter. *Id.* at *5. The precise time when a plaintiff should receive a right-to-sue letter "will vary from case to case, but the basic thrust is this: a plaintiff should receive a right-to-sue letter only after the EEOC has ceased handling the case." *Id.* Where plaintiff does not have a right-to-sue letter and has not requested one, "[a] plaintiff may be able to allege other facts demonstrating that proceedings at the EEOC have ended (or never commenced)." *Id.* [4]

On the record before it, the Court will not dismiss Plaintiff's claims for failure fulfill Title VII's charge-filing requirement. Because the charge-filing requirement is an affirmative defense (as opposed to a jurisdictional issue), Plaintiff is not required to allege facts sufficient to establish that he satisfied this requirement. *Shaukat v. Mid Atl. Pros., Inc.*, Civ. No. TDC-20-3210, 2021 WL 5743909, at *5 (D. Md. Nov. 30, 2021) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) and *Fort Bend*, 139 S. Ct. at 1846) (explaining that, "[b]ecause administrative exhaustion" is an affirmative defense rather than a jurisdictional prerequisite, a plaintiff "is not required to plead [it] in the Complaint"). The allegations currently before the Court do not establish that Plaintiff is not entitled to a right-to-sue letter. Rather, the evidence tends to suggest

---

[4]     The Court notes that *Gardner* was decided when, as discussed above, courts in this circuit considered the charge-filing requirement to be a jurisdictional one (and thus, required plaintiffs to allege facts sufficient to establish that they fulfilled the charge-filing requirement).

the opposite: the MCCR acknowledged Plaintiff's prior charges in its Written Findings on the 2016 Charge without indicating that there was an ongoing investigation (or even that an investigation ever took place); Plaintiff has received Written Findings and a right-to-sue letter with respect to the 2016 Charge, which he filed after the 2015 Charge; and, per the statutory requirements, Plaintiff should have long ago received a right-to-sue letter with respect to the 2015 Charge. *See Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) ("The EEOC is statutorily required to provide a right-to-sue notice to a complainant within, at the latest, 240 days after a claim of discrimination is filed.").

### B.    300-Day Limitations Period

Plaintiff was required to file charges with the EEOC within 300 days of the alleged unlawful acts. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) (citing 42 U.S.C. § 2000e–5(e)(1)). Defendant argues that the allegations in Plaintiff's 2016 Charge are untimely. (Reply at 8–9; Supplemental Reply at 4–5.) The Court agrees that any allegations outside of the 300-day period contained in the 2016 Charge are not timely. However, as discussed in more detail below, this will not result in the dismissal of Plaintiff's claims.

Plaintiff filed his 2015 Charge on or around February 11, 2015. (*See* ECF No. 16-3 at 3.) The earliest allegation in the 2015 Charge is dated July 2014, less than 300 days from February 2015. (ECF No. 19-1.) Thus, Plaintiff's allegations in the 2015 Charge—including the AWOL charge on October 20, 2014 and his transfer to the NET on November 6, 2014—were timely. In his 2016 Charge, which he first filed around May 16, 2016 and later amended in August 2017, Plaintiff refers back to the allegations contained in the 2015 Charge. (ECF Nos. 16-1, 16-2.) To the extent they are incorporated by reference in the 2016 Charge, the allegations originally contained in the 2015 Charge fall outside the 300-day limitations period (e.g., the transfer to the

10

NET occurred approximately 550 days before Plaintiff filed the 2016 Charges).

These timeliness issues would bar Plaintiff's claims if Plaintiff were to rely only on the 2016 Charge. Although Plaintiff argues those charges would be timely brought under a continuing violation theory, that theory does not apply to discrete acts of retaliation or discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("We hold that [Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110.   Here, Plaintiff has alleged discrete acts of retaliation and discrimination, such as the transfer to the NET and his AWOL accusation. Thus, even if these allegations are related to those he described in the 2016 Charge, they would be time barred. *Id.* at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

However, as noted, Plaintiff also filed his 2015 Charge within the requisite 300-day period with respect to these discrete acts. As discussed above, the current record does not foreclose Plaintiff's entitlement to a right-to-sue letter for the 2015 Charge, nor that his claims in this Court are untimely brought based on that entitlement. The Court will therefore not dismiss his claims as untimely at this stage.

### C.      Failure to State a Title VII Claim

Defendant argues that Plaintiff fails to state a Title VII claim for retaliation and discrimination. Plaintiff has sufficiently alleged a retaliation claim with respect to certain acts described in the Amended Complaint. Further, the only argument Defendant makes in support of dismissal of Plaintiff's discrimination claim is that he has not alleged that his job performance was

satisfactory, but Defendant concedes that Plaintiff has sufficiently alleged this point in later briefing. Thus, the Court will also not dismiss Plaintiff's discrimination claim.

### 1.    Retaliation

To prevail on a retaliation claim, a plaintiff is required to allege that: "(1) []he engaged in a protected activity; (2) an adverse action was taken against h[im] by the Defendant; and (3) there was a causal connection between the first two elements." *Forgus v. Mattis*, 753 F. App'x 150, 154 (4th Cir. 2018). With respect to the first element, both formal and informal complaints alleging discrimination can constitute protected activity. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001). To establish the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted). Finally, to demonstrate a causal connection at this stage, a plaintiff need only allege facts "supporting a 'reasonable inference' of causation." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

Plaintiff describes multiple instances of alleged retaliation: (1) the July 2014 reassignment to report to Lt. Della following Plaintiff's filing of a lawsuit in May 2013 and Lt. Della's undermining of Plaintiff's work in July and August of 2014; (2) Lt. Della's withholding of pay on September 26, 2014 following Plaintiff's September 2, 2014 and September 7, 2014 complaints to Cpt. Howard and Human Resources after which Cpt. Howard reprimanded Lt. Della on September 25, 2014; (3) Lt. Della's October 14 and 15, 2014 denial of leave following Plaintiff's October 9, 2014 complaint to Human Resources, which ultimately resulted in Plaintiff's being charged with being AWOL; and (4) Plaintiff's November 6, 2014 reassignment to the NET. (*See generally* Am.

Compl.)

While it is undisputed that Plaintiff engaged in protected activity when he filed the 2013 lawsuit and complained to Cpt. Howard and Human Resources, he has not sufficiently alleged that the first allegedly retaliatory act was retaliatory in violation of Title VII.  Plaintiff does not sufficiently allege that he was subjected to an adverse employment action.  "A reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (citations and quotations omitted).  To qualify as adverse employment actions, the actions must "adversely affect[] the terms, conditions, or benefits" of employment.  *Id.* at 375 (citation and quotations omitted).  "Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment . . . does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Id.* at 376 (citations and quotations omitted).  Here, although Plaintiff has described a potentially unpleasant work environment, Plaintiff has alleged no adverse effects to his terms, conditions, or benefits of employment resulting from his transfer to report to Lt. Della.

Further, even if this action was materially adverse, Plaintiff fails to allege facts sufficient to establish a causal connection between the protected activity (i.e. the filing of the 2013 lawsuit) and the allegedly adverse actions (i.e. the July 2014 reassignment and Lt. Della's undermining behavior).  Plaintiff does not allege any facts, other than the dates on which these activities each occurred, to suggest that there exists a causal connection.  For temporal proximity alone to establish causation, the protected activity and adverse action must have occurred "very close" in time. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation and quotations omitted) ("The cases that accept mere temporal proximity between an employer's knowledge of

13

protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."); *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) ("We find that [three to four months] is too long to establish a causal connection by temporal proximity alone."); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) ("Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link."). Here, the reassignment to report to Lt. Della and his allegedly belittling behavior occurred over a year after Plaintiff filed the lawsuit. This is insufficient to establish causation based on temporal proximity alone, and Plaintiff has alleged no other facts tending to show a causal connection. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen-month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.").

However, because Plaintiff has sufficiently alleged that the three other allegedly retaliatory acts were retaliatory in violation of Title VII, the Court will not dismiss his retaliation claim. First, Lt. Della's withholding of Plaintiff's pay is an adverse employment action. *White*, 548 U.S. at 71–73 (explaining that a loss of pay, even if reinstated by backpay, could qualify has a materially adverse employment action). Second, although an AWOL charge on its own may not qualify as an adverse employment action, where—as here—it is accompanied by a loss of pay or other benefits, it qualifies as such. *See Shivers v. Saul*, Civ. No. JKB-19-2434, 2020 WL 7055503, at *4 (D. Md. Dec. 2, 2020) (citations omitted) ("Generally, an AWOL charge without any further negative consequences does not rise to the level of an adverse employment action . . . In this case, however, Plaintiff's AWOL charges resulted in a five-day unpaid suspension, and such decrease

14

in pay qualifies as an adverse employment action that affected the terms and conditions of Plaintiff's employment."). Finally, Plaintiff alleged that the transfer to the NET was an adverse action. For purposes of Defendant's Motion to Dismiss, Plaintiff has sufficiently alleged that such action—with its alleged associated loss of responsibility and leadership—is an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Further, Plaintiff has sufficiently alleged a causal connection with respect to these three acts. The temporal proximity is very close: Lt. Della withheld Plaintiff's pay one day after he was reprimanded for his behavior toward Plaintiff; Lt. Della denied Plaintiff leave, which ultimately resulted in Plaintiff being charged with being AWOL, about five days after Plaintiff filed his second complaint with Human Resources; and Plaintiff was reassigned to the NET less than one month after this second complaint to Human Resources. At this stage, the Court finds that these facts are sufficient to establish a causal connection. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) ("[Plaintiff's] evidence of temporal proximity also tends to show causation: according to her uncontradicted testimony, she complained to [Human Resources] about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated.").

## 2.   Discrimination

Defendant's only argument in support of dismissal of Plaintiff's discrimination claim is that Plaintiff does not adequately allege that his job performance was satisfactory. (Reply at 10.) This argument, raised in initial briefing, was not reiterated in the supplemental briefing ordered by

the Court.  In fact, Defendant conceded in supplemental briefing that Plaintiff has sufficiently alleged that his job performance was satisfactory and made no other arguments in support of dismissal of this claim.  (Supplemental Reply at 5.)  The Court will therefore not dismiss Plaintiff's discrimination claim.

**IV.     Conclusion**

For the reasons set forth in the foregoing Memorandum, a separate Order shall issue granting in part and denying in part the portions of the Motion to Dismiss (ECF No. 11) that were previously held in abeyance.  The Motion to Dismiss (ECF No. 11) will be granted to the extent that it sought to dismiss Plaintiff's retaliation claim based on the July 2014 reassignment and Lt. Della's alleged undermining of Plaintiff's work in July and August of 2014, but will otherwise be denied.

DATED this _1_ day of February, 2022.

BY THE COURT:

James K. Bredar
Chief Judge